(40 App. Div. 281.)

### In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   May 5, 1899.)

1. EMINENT DOMAIN—COMPENSATION—LANDS TAKEN FOR PARK.
    Where Laws 1894, c. 56, § 1, provides that certain lands, described therein, or so much thereof as the commissioners to be appointed under it shall deem advisable to be acquired, "are hereby declared to be" a public park, the cash value of the lands taken should be estimated as of the date when the commissioners decide what lands shall be acquired, as that is the time when the lands are actually appropriated by the public.

2. SAME—RIGHT TO INTEREST.
    The owners of lands appropriated by the public for a park are entitled to legal interest on the value of the lands from the date of such appropriation to the date when the award is paid.

3. SAME—TAXES AND ASSESSMENTS.
    The owners of lands appropriated by the public for a park are entitled, in addition to the cash value of the lands, to an allowance for taxes imposed since the date of such appropriation, and for assessments imposed for improvements thereafter authorized and since begun, with interest from the date when such taxes and assessments became a lien to the date when the award is paid, and, where they have been paid, with interest from the date of payment to the date when the award is paid.

4. SAME—DEDUCTION.
    Where lands are appropriated for a public park, the value of the use and possession of the property by the owners, from the date of such appropriation to the date when the award is paid, should be deducted from the compensation to be allowed them.

5. SAME—CONFIRMATION OF AWARD.
    Where commissioners appointed to make an award of compensation for land taken for a public park proceed on a correct principle, and there is no manifest error in their estimates, and the sums awarded are not so grossly inadequate as to afford evidence of partiality, fraud, or undue influence, their award will be confirmed.

Application of the mayor and commonalty of the city of New York to acquire title to lands in the twelfth ward for a public park.   On motion to confirm report of commissioners of estimate.   Granted.

The commissioners were appointed under chapter 56 of the Laws of 1894. That act provided (section 1) that certain lands, described therein, "or so much thereof as the commissioners to be appointed under the provisions of this act shall deem advisable to be acquired, are hereby declared to be a public place and public parkway, for public use and public purposes." The commissioners were directed (section 2) to proceed with all due diligence to "make a just and equitable estimate of the loss and damage to the respective owners, parties and persons respectively entitled to or interested in the said lands," etc., and to report to the supreme court without unnecessary delay. They were also directed (section 5) to include and set forth in their report "the several and respective sums estimated as and for the compensation and recompense or allowance to be made for the loss and damage of the respective owners of the fee or inheritance of such lands, tenements, hereditaments and premises respectively, and for the loss and damage of the respective owners of the leasehold estate or their interest therein separately." The commissioners, having viewed the premises, decided, on the 9th day of January, 1895, to take all of the lands described in the act, and proceeded to estimate the value of the property as of that date. In their report they state the rule or principle by which they were governed in making the awards as follows: "We have valued the said lands, tenements, hereditaments, and premises as of January 9, 1895, and have also considered and allowed for the delay of over four years since in making the awards, the taxes since imposed and assessments since imposed for improvements thereafter authorized, begun, and completed, and the use, possession, and occupation meantime of the parties, whether valuable or unproductive. In making our said estimate, we have accordingly allowed, and the awards hereinafter set forth include, in addition to the value of said lands as of January 9, 1895, interest on such value at the rate of 6 per cent. per annum from the said date to the date when the awards shall be due and payable, and also the taxes since imposed and assessments since imposed for improvements thereafter authorized and since begun, where unpaid, with interest from the date when said taxes and assessments became a lien on said premises to the date when the said awards shall be due and payable, and, where paid, with interest thereon from the date of payment to the date when said awards shall be due and payable, less, however, and deducting therefrom, the value of the use and possession of the property, as determined by us, to the said parties, respectively, since January 9, 1895, to the date when the said awards shall become due and payable." The report shows that the deduction for use and occupation varies in each instance, according to the actual circumstances of each parcel. Where the parcels consisted of vacant building lots, not improved at the time of the appropriation, and yielding no income or revenue since that date, the deduction for use and occupation was about $2\frac{1}{4}$ per cent. of the value from the allowance made for interest, taxes, and assessments, etc. Where the parcels were only slightly improved, or the improvements were of such an inferior description that the revenue from them was limited, the deduction was about 20 per cent. of the value. But where the parcels were fully improved and occupied as tenements or dwellings, so that the revenue was substantially unrestricted, the commissioners decided to consider this use and occupation as equal to the interest, taxes, and assessments, and no allowance for the latter was made. There was no objection to the confirmation of the report on the part of the property owners, so far as the principle followed in making the awards was concerned. The city, however, opposes confirmation, claiming that the property owners were only entitled to the market value of the property upon the 9th day of January, 1895, with no additional allowance of any kind whatsoever; and this claim presents substantially the only question now before the court.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Albert Bach, for city of New York.

James A. Deering, for Anna M. Deen and certain other property owners.

W. W. MacFarland, for Mary C. Van Riper and certain other property owners.

Edw. Mitchell, for Henry S. Van Bouren and certain other property owners.

John A. Straley, for John Sander and certain other property owners.

Clarence L. Barber, for Charles F. McCabe, property owner.

Truman H. Baldwin, for Seth M. Milliken and certain other property owners.

William B. Aitken, for Catherine B. Aitken, property owner.

Roger A. Pryor, for Anna Fellman and certain other property owners.

George W. Ellis, for owners of parcels 1 and 10.

Gumbleton & Hottenroth, for People's Guaranty & Indemnity Company, mortgagee of certain property.

William H. Stockwell, for Jennie M. Tompkins, property owner.

BARRETT, J. There can be no doubt that the actual appropriation of the property here by the city occurred on the 9th day of January, 1895, when the commissioners decided that all the lands described in the act should be acquired. The value of the lands appropriated should be estimated as of that date. This conclusion is in entire accord with the rule laid down in Re Munson, 29 Hun, 333, and in Re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750,—a rule which was followed and reaffirmed in People v. Collis, 20 App. Div. 341, 46 N. Y. Supp. 727, and in Re Mayor, etc., of City of New York, 24 App. Div. 7, 49 N. Y. Supp. 119. From the date when the commissioners decided what lands should be acquired, such lands were by the act "declared to be a public place and public parkway for public use and public purposes." That was an appropriation of these lands as of that date. It results, from such appropriation, that the property owners became entitled to the actual cash value of their lands upon the same date. This rule is well settled. It was stated with force and clearness in the leading Massachusetts case of Parks v. City of Boston, 15 Pick. 198, a case which has been much cited and frequently followed in both the decisions of this court and those of other jurisdictions. It is the principal authority in Re Munson, supra, and its language was quoted with approval in Re Public Parks, supra. "The true rule would be," said Chief Justice Shaw, "as in the case of other purchasers, that the price is due and ought to be paid at the moment that the purchase is made, when credit is not especially agreed upon; and if a 'pie poudre' court could be called on the instant and on the spot, the true rule of justice for the public would be to pay the compensation with one hand while they apply the axe with the other; and this rule is departed from only because some time is necessary by the forms of law to conduct the inquiry." This is a clear statement of the true basis for that "just compensation" which the constitution

guaranties.    Upon both principle and authority, the property owners were entitled to the cash value of their lands upon the 9th day of January, 1895, and the obligation of the city to pay that cash value (when ascertained), as of that date, then accrued.    Upon that obligation the right to interest rests.    If the property owners were then entitled to their money, they were equally entitled to its use, or to the legal substitute for its use.    The testimony of the witnesses on both sides showed that the property was rapidly and steadily appreciating in value at the time it was appropriated to the public use, and that it continued to increase rapidly in value during the four years occupied by the commissioners in estimating the values.    Through all this time the owners were kept out of the money due them by the city.    Could any theory of "just compensation" be upheld which would refuse to allow some equivalent for this withholding of the cash to which these owners became entitled upon the day when their lands were thus sequestered?    Manifestly not.

It is equally clear that, at the time of the actual appropriation of the property by the city, the owners were entitled to be relieved of all burdens incident to their ownership.    Certainly it would not be "just compensation" to take a man's land, and compel him to pay the taxes and assessments thereafter levied on the property, while at the same time withholding the purchase price.    Undoubtedly, had the title completely vested in the city on the 9th day of January, 1895, the property owners would have been relieved from all obligations of this nature.    Now it appears that some of these property owners were deprived of all beneficial use of their property on that date, while others had thereafter but a limited use; and yet all the awards were, as specified in section 14 of the report, "subject to the amount due and unpaid on account of taxes and assessments lawfully confirmed prior to, and a lien upon, the premises for which the said awards have been made, at the date of this our report."    Upon the city's theory, therefore, the owner must not alone be deprived of the unrestricted use of his property and of the ad interim use of his money, but he must also be compelled to pay for its police protection, and for public improvements charged against it as a benefit, during all the period of delay, for which he is in no way responsible, and which he is powerless to shorten.    It will be seen that, if this theory be correct, the owner's award would be constantly diminished by each year's delay, until, if the period were long enough, it would be entirely wiped out.    It can hardly be contended that a theory which, logically followed out, would under any possible circumstances produce such a result, affords a satisfactory basis for an award of "just compensation."

The learned counsel for the city relies mainly, in support of his contention, upon the case of In re Public Parks, supra, and especially upon the following passages, quoted from the opinion of Presiding Justice Van Brunt:

"That the owners were not entitled to interest upon the awards, nor to an allowance for taxes paid, seems also to be settled, upon principle and authority.    Certainly, the rights of the owners of property are not greater under the act of the legislature than they would have been had they contracted with

the city for the purchase of the lands in question; and no case can be found where the rule is laid down that the owner, pending a specific performance of a contract of purchase, *is to have both the possession of property, the value of its use and occupation, and interest upon the purchase price.* * * * The same principle is applicable to the question of taxes assessed upon the property during the time during which the owners have been in possession. *They had the use and occupation of the property, and derived the profits therefrom,* and, under a very familiar principle of law, were bound to keep down the annual taxes and incumbrances upon the property which were assessed during the period of their enjoyment."

It is evident, from the passages in that opinion which we have italicized, that interest was there disallowed solely because it appeared that there had been a beneficial use of the property which survived its taking, and which was considered an equivalent for interest. This becomes still clearer when we read the opinion in connection with the report of the commissioners; for they say, in stating the principle upon which their awards were made:

"We have regarded the lands and properties mentioned in the act of June 14, 1884, as taken and appropriated by that act, and have appraised the value as of that date, although the subsequent increase in value, notwithstanding it was caused largely by the establishment of these parks and parkways, has influenced us to make such estimate liberal. We have also considered and allowed for the delay of over four years since in making the awards, the taxes since imposed, and the occupation meantime of the parties, whether valuable or unproductive."

The conclusion there reached by Presiding Justice Van Brunt, namely, "that the owners were not entitled to interest upon the award, nor to an allowance for taxes paid," was, of course, based upon the above statement of the commissioners, showing the manner in which the awards had been arrived at. Interest and taxes were not allowed for the specific reason that there had been a use of the property which the court deemed an equivalent. There can be no doubt that, when a beneficial use survives the taking, this theory is a just one. The owner may be allowed the unrestricted use of the premises after the taking, and the premises may be of such a character, and so situated, that the income derivable therefrom is a full equivalent for interest, taxes, and assessments. Such is the case where the property has been fully improved and rented, and where there has been no loss of tenancy or diminution of rental pending the condemnation proceedings. Upon the other hand, the property may be but partly improved, or entirely unimproved. The owner is then allowed but a partial or restricted use pending the proceedings, as illustrated in People v. Collis, supra. In such cases, too, the natural and customary increment from previously unrestricted use may well be diminished—more or less, according to circumstances—by the institution and probable duration of the condemnation proceedings. The extent of such elimination is necessarily a matter of proof. It becomes, in each case, a simple question of fact as to what use, if any, survives the taking of the particular parcel, and to what extent this use may be treated as an equivalent for the use of the money withheld, and the continuance of the burden entailed by law upon the property owner by virtue of his naked possession. This is the theory upon which the commissioners here acted, and we think it was the only correct and

proper theory.    It finds the fullest support in the authorities to which we have referred, and it is essentially just.

As to the objections to confirmation, interposed by several property owners, who claim that the amounts awarded to them were insufficient, we need only say that the judgment of the commissioners, upon the evidence, cannot be disturbed.    They acted upon a correct principle, there was no manifest error in their estimates, and the sums awarded were not so grossly inadequate as to afford evidence of partiality, fraud, or undue influence.    See In re Gilroy, 78 Hun, 260, 28 N. Y. Supp. 910.

As to the contention with regard to parcel No. 18, that the award thereon has not been made subject to the amount remaining unpaid on a certain mortgage held against the property by the People's Guaranty & Indemnity Company, any error upon this head can be corrected upon the settlement of the order.

The motion to confirm the report is granted.    All concur.