(59 App. Div. 603.)

### In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 4, 1901.)

1. EMINENT DOMAIN—INTEREST AND TAXES—USE AND OCCUPATION.
　　Where lands are appraised for park purposes, under Laws 1894, c. 152, as of the date of the passage of the act, interest and taxes are to be added to the award, but as an offset a deduction may be made of rentals actually received by the owner, or of the value of the use and occupation of the premises from the date of the appropriation to the time of the award.

2. SAME—BURDEN OF PROOF.
　　The burden is on the city to show what amounts should be allowed by way of deduction.

3. SAME.
　　Act 1837, c. 182, provided that Thirteenth avenue, a projected avenue in the Hudson river, about 700 feet beyond a certain bulkhead, should be the permanent exterior street of the city. The land between the bulkhead and the avenue was under water. Act 1857, c. 763, § 2, provided that it should not be lawful to fill in with stone or other solid material beyond the bulkhead line, nor to erect any structure exterior to it. *Held*, that at the time of a grant by the city in 1865 the bulkhead was the exterior line of the city, and a covenant that the grantee might have "all manner of wharfage, cranage," etc., from the "exterior line of the city" gave the grantee no interest to the land under water beyond the bulkhead, and hence he was not entitled to compensation therefor when the city appropriated the land contained in the grant.

Appeal from special term.

Motion to confirm report of commissioners in condemnation proceedings under the Riverside extension act. Objection by the Standard Gaslight Company and others. From an order confirming the report of the commissioners of appraisal (58 N. Y. Supp. 963), objectors appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

James A. Deering, for appellant Standard Gaslight Co.
W. Bruce Cobb, for appellants Crimmins.
Edmund L. Mooney, for appellants Smith and Bloxham.
Edmund Coffin, for appellant E. S. Coffin.
Theodore Connoly, for respondent.

PATTERSON, J.   By an order of the supreme court, made under the authority of an act of the legislature of the state of New York, known as "Chapter 152 of the Laws of 1894," commissioners were appointed to ascertain and appraise the compensation to be made to the owners and all persons interested in real estate appropriated or designated by such act as and for a part or extension of the Riverside Park in the city of New York, and for public docks, wharves, or commercial purposes.   The commissioners so appointed entered upon the performance of their duties, and on or about the 21st of December, 1898, made their first separate report, in and by which they awarded certain sums as damages to persons whose property was taken or affected by the improvement;  among such being the Standard Gaslight Company, Euphemia S. Coffin, Thomas Smith, John D. Crimmins, and Thomas E. Crimmins, the present appellants. The commissioners reported that in making their awards they proceeded upon the theory that the lands were appropriated by the city as of the date on which the act of the legislature above mentioned went into effect.   In fixing their awards they made no allowance to property owners for interest upon the sums awarded, or for taxes or assessments affecting the properties taken, and placed upon them after the passage of the act.   A motion to confirm the report having been made by the city of New York, exceptions taken by the property owners above named were argued.   Those exceptions were overruled, and the report of the commissioners was confirmed, and from the order of confirmation their appeals are taken.

All of the appellants excepted to the refusal of the commissioners to allow, in enhancement of the awards, interest upon the values as fixed by such commissioners, and to the refusal to allow taxes imposed upon the properties from the date of the passage of the act.   It is conceded by the city that the appropriation in the hands of the municipality was as of the date of the passage of the act.   It is insisted, however, that the commissioners were right in their refusal to allow either interest or taxes.   The point is not open to further discussion in this court.   It was settled by what was decided in Re Mayor, etc., of City of New York, 40 App. Div. 281, 58 N. Y. Supp. 58, in which the rule relating to the allowance of interest and taxes in cases of this character and the reasons of the rule are fully stated in the opinion of the court, written by Mr. Justice Barrett.   The order of confirmation in the present proceeding was made by the learned justice at special term before the decision in Re Mayor, etc., of City of New York, supra, was announced.   He considered that he was concluded by the decision of the general term in the First department (In re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750) in a case to which he refers to as precisely like the one at bar.   In Re Mayor, etc., of City of New York, supra, a distinction is pointed out between that case and the one upon which the learned judge at the special term relied, and that same distinction is to be made in this case, namely, in Re Public Parks interest and taxes were not allowed for the specific reason that there had been a use of the property, which the court deemed an equivalent;  while here that feature does not appear. There was another feature in Re Public Parks, supra, namely, that

the principle laid down in the case of Detmold v. Drake, 46 N. Y. 320, was held to apply. In the latter case the court of appeals held that the authority given to the commissioners was to be construed as authorizing them to estimate the damages and compensation in view of the fact that four months would elapse before payment could be demanded, and that they were presumed to have acted under this construction of the law. In Re Public Parks, supra, the commissioners especially reported that they had taken into consideration the fact that there would be delay in realizing upon the awards which would be made by them, and that they had made their estimates accordingly liberal. These features are conspicuously absent in the case at bar. We conceive the proper rule in this case to be that interest and taxes are to be added to the award, but as an offset a deduction may be made of rentals actually received by the owner, or, where rentals have not been received, of the value of the use and occupation of the premises from the date of the appropriation of the property to the time of the award. As these subjects of deduction are in the nature of offsets, we are of the opinion that the burden is upon the city to show what amounts should be allowed by way of deduction. It follows from what has been said that the exceptions of all the appellants, so far as they have been referred to, must be sustained, and the order of confirmation reversed, and the proceeding sent back to the commissioners for correction in accordance with the views expressed.

There remains for consideration an exception taken by the appellants Crimmins. They claimed before the commissioners that they were entitled to compensation for the taking of property in addition to that for which an award was made them, or for the destruction of easements appurtenant to property. The parcel of land owned by them, for the taking of which an award was made, extends from Ninety-Sixth street to Ninety-Seventh street and from Twelfth avenue on the east to a point extending 100 feet into the river as far as the bulkhead line of 1857. It is a plot 100 feet in depth by 201 feet 10 inches in width. A bulkhead was built on the western boundary of the land. Their claim to additional compensation is not formulated in express terms, but in substance it is that they have a right of wharfage and cranage at an exterior line of the city at a point 700 feet to the westward of their present bulkhead line, and in consequence some property right or interest in the land under water between that bulkhead line and the so-called exterior line mentioned. That claimed exterior line is drawn at what was at one time a projected avenue called "Thirteenth Avenue," and the claim of the Messrs. Crimmins is founded upon a grant made by the city to their predecessor in title. It appears that on the 27th of December, 1865, the mayor, aldermen, and commonalty of the city of New York made a grant of certain lands, including that above described, to one Pater B. Amory, an upland owner. The property thus granted, and of which a conveyance was made by the city in February, 1871, is described as beginning at the point of intersection of the original line of high water of the Hudson river and the center line of Ninety-Seventh street; thence westerly along the center line of Ninety-

Seventh street to the bulkhead line as established by the harbor commissioners in the Hudson river; thence southerly along the said bulkhead line to Ninety-Sixth street; thence easterly along Ninety-Sixth street to the original high-water line of the Hudson river; thence along said original line of high water as the same winds and turns in a general northwesterly direction to the point or place of beginning. There was annexed to a deed from the city a map which places the westerly boundary of the grant at the present bulkhead line of the property. The grant also contains a covenant as follows:

"The parties of the first part, for themselves, their successors and assigns, do covenant and agree to and with the party of the second part, his heirs and assigns, that he  *  *  *  shall and lawfully may from time to time and at all times hereafter fully have and enjoy, take and receive, and hold to his and their own proper use, all manner of wharfage, cranage, advantages, or emoluments growing or accruing by or from that part of the exterior line of the said city lying on the westerly side of the hereby-granted premises fronting on the Hudson river, with full power to collect and receive the same for his and their own use and benefit forever [with an exception not material]."

The argument made on behalf of the Messrs. Crimmins is that at the time this grant was made the title of the city, by virtue of its charters and various acts of the legislature of the state of New York, extended 700 feet beyond the present bulkhead line, the intervening space being land under water; that by an act of the legislature passed in 1837 (chapter 182) it was provided that Thirteenth avenue, as laid out on a map therein referred to, should be the permanent exterior street or avenue in the city of New York along the easterly shore of the North or Hudson river, between the southerly line of Hammond street and the northerly line of 135th street. The inference is drawn that, the city owning land under water to an exterior line at Thirteenth avenue, and having granted to Amory the right to wharfage and cranage growing or accruing by or from that part of the exterior line of the city lying on the westerly side of the premises granted to Amory, that grant necessarily carried with it easements and property rights over the intervening land under water between the bulkhead line as it at present exists and an established exterior line at Thirteenth avenue. The Messrs. Crimmins are the grantees of Amory, and would have the same rights that he had. If the act of 1837, establishing the projected avenue, was operative at the time the grant was made to Amory, and the city of New York had the right to build out docks or piers to that exterior line of the projected Thirteenth avenue, such right would doubtless have passed to its grantee, Amory, but its grant to him, when referring to the exterior line of the city, must be construed with respect to the power and authority of the city of New York to make grants; and the exterior line of the city mentioned in the grant to Amory must be that exterior line up to which the city had the right to construct wharves or piers or bulkheads at the time that grant was made. Whatever may have been meant by the exterior line of the city prior to 1857, in that year another exterior line was adopted. It was adopted, as Judge Finch says in Williams v. Mayor, etc., of City of New York, 105 N. Y. 429, 11 N. E. 829, in consequence of a new agreement both in fact and in legal effect made between the state and the city. That

new exterior line corresponds with the western boundary of the land of the Messrs. Crimmins. So far as that land is concerned, the act of 1857 moved the exterior line back to the present westerly boundary of their land. By section 2 of the act of 1857 it was provided that it should not be lawful to fill in with stone or other solid material beyond the bulkhead line or line of solid filling established by that act; nor should it be lawful to erect any structure exterior to the bulkhead line, except a sea wall and certain piers; nor should it be lawful to extend city piers beyond the exterior or pier line beyond or outside the said sea wall; and by chapter 522 of the Laws of 1860 it was provided by section 2 that it should not be lawful for any person to build or erect or maintain any pier, bulkhead, or other structure beyond the exterior line defined and recommended by the commissioners for the preservation of the harbor of New York, established in and by chapter 763 of the Laws of 1857. The exterior line of the city, therefore, referred to in the grant to Amory, was the new exterior line established in 1857. The city had no authority to grant rights to Amory extending beyond that new line, and the construction of the grant must be made to conform to the statutes in force at the time the grant was made. It was at the new exterior line that Amory and his successors were entitled to take wharfage and cranage as that line was established in 1857, and shown on the map which accompanied the grant. Nor do we think that the claimants' right has been enlarged by any subsequent legislation or by the action of the secretary of war in fixing a bulkhead line under an act of congress of 1888, as amended in 1890. That legislation did not act upon the grant to Amory. We are of opinion that full compensation was made to the Messrs. Crimmins for all that was taken from them by the city in this matter, except with respect to interest and taxes.

The exceptions of the several appellants must be sustained to the extent above indicated. The order appealed from is therefore reversed, and the report sent back for such further proceedings as may be necessary to conform to the views above expressed. All concur.