## No. 14,679.

### FISHEL v. CITY AND COUNTY OF DENVER.
(108 P. [2d] 236)

Decided November 12, 1940. Rehearing denied December 16, 1940.

Mr. Howard Roepnack, for plaintiff in error.

Mr. Malcolm Lindsey, Mr. E. L. Fundingsland, Mr. Wayne D. Williams, for defendant in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

In the court below defendant in error, to which reference is herein made as the city, instituted this proceeding in eminent domain to condemn certain lands of plaintiff in error, whom we shall designate as Fishel, situate in Arapahoe county. On the trial the jury returned a verdict describing the property taken and fixing the value of the land and improvements at $7,000. Judgment was entered on the verdict, to review which Fishel prosecutes a writ of error. So far as generally pertinent to this review the petition alleges that August 26, 1937, there became effective an act of Congress authorizing the establishment in or near Denver of a branch of the Air Corps Technical School, and acceptance on behalf of the United States of title to lands within and without the city for use as a site thereof, as well as a tract of land suitable for use as an aerial and gunnery bombing range, for the acquisition of all of which lands the people of Denver previously had voted bonds in the sum of $750,000; that thereafter by ordinance, the Denver city council declared the establishment of such school would accomplish a public, local municipal purpose, and authorized the proper officers of the city to proceed forthwith to do all things expedient, and to bring all actions necessary, in and about the furnishing by the city of the lands and building sites contemplated by the ordinance; that the Secretary of War of the United States had selected Fishel's property as a part of the site for the bombing field and requested the city to obtain title thereto; that the suit was brought

in the exercise of the power of eminent domain conferred upon the petitioner under and by virtue of the state Constitution and statutes and the charter of the city, and that said property was "needed by the petitioner for a public purpose of the petitioner."

In *McNichols v. Denver*, 101 Colo. 316, 74 P. (2d) 99, we determined that the expenditure by the City and County of Denver of funds to be derived from the issuance and sale of the above mentioned municipal bonds for the acquisition of lands for the use of this Air Corps Technical School and bombing field, was for a local municipal purpose and declared that such bond issue was valid.

The principal question presented for our consideration in the instant proceeding is whether the city is authorized to exercise the power of eminent domain. In this connection Fishel contends: First, that the state of Colorado is without the power to condemn private property within its jurisdiction for the public use of the United States and, hence, because of such status of destitution, could not possibly delegate such authority to the city; second, that if the state actually possesses such power of eminent domain, it has not delegated the same to the city for the particular purpose herein involved.

In the first instance, these questions were raised by demurrer which generally has been regarded as permissible (2 Lewis on Eminent Domain [3d ed.], §590; 18 Am. Jur., p. 970, §326), although in this jurisdiction the practice seems to have been to raise such issues by answer. After the termination of the trial Fishel objected to the entry of judgment on the same grounds. The latter objection was untenable, as questions of this nature must be raised in advance, and be determined by the court in limine. *Pine Martin Mining Co. v. Empire Zinc Co.*, 90 Colo. 529, 11 P. (2d) 221; *Wassenich v. Denver*, 67 Colo. 456, 186 Pac. 533. Where, as here, respondent elects to challenge the right of petitioner to condemn by demurrer, the well-pleaded allegations of

the petition must, for the purposes of the demurrer, be assumed to be true, as in ordinary cases, and a respondent may not ground a legal theory on extrinsic facts which are neither pleaded nor proved. If reliance is to be placed on such, they should be introduced by plea or answer. See, 2 Lewis on Eminent Domain (3d ed.), §591; 18 Am. Jur., p. 970, §326. We make the above observations at this point to demonstrate, as we conceive, the deficiency in the factual premise upon which Fishel's legal argument as to his first contention, must depend. The two cases upon which he relies as being decisive of the question are *People ex rel. Trombley v. Humphrey,* 23 Mich. 471, and *Darlington v. United States,* 82 Pa. 382. In the Trombley case, decided in 1870, it was held that an act of the Michigan legislature, which undertook to authorize the governor to condemn private lands within the state for the purpose of turning the same over to the United States for the erection and maintenance of lighthouses thereon, was unconstitutional upon the basis that inherently a state may not authorize the taking of property within its jurisdiction for the use of the United States in carrying out the public and governmental functions assigned exclusively to it by the federal Constitution. The Darlington decision seems to rest upon several other points of statutory construction and is pertinent to the question under consideration only to the extent that it quotes from the opinion in the Trombley case and approves that decision. "The decision in *People ex rel. Trombley v. Humphrey,* undoubtedly is based upon the view that the purpose for which the land was condemned was for a federal use only and had no relation to the needs of the state." *Via v. State Commission,* 9 Fed. Supp. 556. Almost without exception other courts considering the Trombley decision have made analogous expressions concerning its scope. See *State ex rel. v. Milwaukee,* 156 Wis. 549, 146 N.W. 775; *Rockaway Corporation v. Stotesbury,* 255 Fed. 345; *Orr v. Quimby,* 54 N.H. 590; *Kohl v. United States,* 91 U.S.

367, 23 L. Ed. 449. In order, therefore, to make applicable the doctrine announced in the Trombley case to the proceeding before us, counsel for Fishel argues that the project is for *exclusive* federal use, as is illustratively disclosed by the statements in his brief, that, "The Air Corps Technical School and the bombing range are institutions established for the purpose of the United States. Exercise of this power is solely in aid of the sovereignty of the United States"; and, "The case at bar involves a use for the United States to the exclusion of the use by the inhabitants of Denver." The allegations of the petition, which, as we have observed, must be taken as true, do not support the premise adopted. On the contrary, the petition sets forth that the bonds voted by the people were to provide a fund to be used for purchasing sites for the school "in cooperation with the federal government" and alleged that the establishment of the school and bombing field would be of local use and benefit to the city and its people.

The further lack of pertinency of the Trombley case to the situation disclosed by the record here is shown by the following recital in the opinion: "It is suggested by the eminent counsel for the relator that the proceeding may be sustained on the ground of the interest of the state, by reason of its coastwise commerce, in the establishment of lighthouses upon these waters. But the act does not proceed upon any theory of state interest. It assumes that the taking is to be for the United States exclusively. It is not necessary for us to consider, therefore, what might be the result were the theory of the act different." In contrast, the petition in the case at bar alleges that the effective ordinance "found, determined and declared that the establishment of said school and appurtenances would accomplish a public, local and municipal purpose and would facilitate air transportation service at Denver and better enable the petitioner to provide skilled mechanics and technical advantages essential to creating airways to and through Denver,"

and thus, legislatively at least, proclaimed a concurrent federal and local use.

Upon the record before us this proceeding is not brought within the purview of the Trombley decision, even if its pertinent pronouncements be considered as sound.

In *McNichols v. Denver, supra,* we determined that this project was a public one. We further held, upon the grounds specified in the opinion, that it possessed the necessary local and municipal character to empower the city to participate in its creation to the extent contemplated. Concerning the effect of the duality of the association of the United States and the city, we said: "The mere fact that the control and management of the air school will be retained by the federal government through the war department obviously does not create an exclusive federal purpose so as to debar the proposed participation by the city as not being a proper local and municipal purpose." Where a state, or a municipality under its authorization, seeks to take land under the right of eminent domain for a lawful, local state or municipal purpose, the circumstance that such land is later to be turned over to the United States to better effectuate the public object of the taking, is no valid objection to the condemnation. *Lancey v. King County,* 15 Wash. 9, 45 Pac. 645, 34 L.R.A. 817; *State v. Milwaukee, supra; Rockaway Corporation v. Stotesbury, supra;* and *Via v. State Commission, supra.* See, also, *Gilmer v. Lime Point,* 18 Cal. 229; *Branch v. Lewerenz,* 75 Conn. 319, 53 Atl. 658; *Reddall v. Bryan,* 14 Md. 444, 74 Am. Dec. 550, wherein it was held that property taken for the use of the general government is taken for a public purpose for which a state may exercise its power of eminent domain. Although perhaps beyond the scope of our inquiry, it is said on this subject in 1 Lewis on Eminent Domain (3d ed.) §309; "It seems to us * * *, that property taken for the use of the national government, being for the use of all the people

of all the states, is certainly for the use of the people of that state where it is located, who would be likely to be especially interested in the improvement to be made."

For the reasons assigned we are of the opinion that Fishel's first contention presents no basis for reversal.

■ In our opinion, without merit also is Fishel's second dual contention to the effect that the state has not delegated to the city the power of eminent domain for the purposes herein involved and, even if this was accomplished, that the city has not conferred that power upon its council or officers. It is quite true that the so-called Home-rule Amendment, article XX, Colorado Constitution, under which Denver operates, does not specifically name either air school sites or bombing fields as objects for which the city might condemn private property. However, section 1, article XX, does enumerate a considerable number of purposes in the performance of which the right of eminent domain was conferred upon the city. In view of the wide scope of such enumerated cases in which the power might be exercised—probably then considered as being all inclusive—and the circumstance, as we have so many times held, that this amendment was designed to give as large a measure of home rule in local municipal affairs as could be granted under a republican form of government, we have no doubt that the people of Colorado intended to, and in effect did, thereby delegate to Denver full power to exercise the right of eminent domain in the effectuation of any lawful, public, local and municipal purpose. We so held in *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066, wherein the power of the city to build an auditorium, also not expressly granted by article XX, was questioned upon substantially the same basis as is here advanced. In the opinion in that case it is stated: "But we do not agree * * * that the stinted grant of power contained in section 1 and other parts of the article is the only power possessed by Denver. It seems very clear that the statement contained in the

first section was not intended to be an enumeration of powers conferred, but simply the expression of a few of the more prominent powers which municipal corporations are frequently granted." See, also, *Londoner v. Denver*, 52 Colo. 15, 119 Pac. 156; *Denver v. Mountain States Co.*, 67 Colo. 225, 184 Pac. 604. We have uniformly held that this amendment, among other things, conferred upon Denver, as well as other home-rule municipalities organized under section 6 thereof, every power possessed by the general assembly in granting charters generally. *Watson v. Fort Collins*, 86 Colo. 305, 281 Pac. 355, citing *Newton v. Fort Collins*, 78 Colo. 380, 241 Pac. 1114. See, also, *Denver v. Hallett, supra; Londoner v. Denver, supra; Denver v. Mountain States Co., supra; People ex rel. v. Perkins*, 56 Colo. 17, 137 Pac. 55; Ann. Cas., 1914D, 1154; *Lord v. Denver*, 58 Colo. 1, 143 Pac. 284, L.R.A. 1915B, 306; Ann. Cas., 1916C, 893. As before stated the legislature, prior to the adoption of the Home-rule Amendment, constitutionally could have conferred upon a municipality the power here questioned and in accordance with the view taken in the cases last cited it must be considered that such authority now is vested in the city by virtue of the amendment. This legal situation makes impotent Fishel's corollary objection that the city is without power to condemn property outside its corporate limits. In this connection Fishel does not question that the people and the general assembly *could* confer upon a municipality the right to condemn private property outside its boundaries for its local public use, but contends that such has *not* been done as to the project here involved. It being thus conceded that the legislature possessed the right here questioned, it would seem clear that under the doctrine of the cases last above enumerated, such power passed to the city by the Twentieth Amendment. The cases of *Healy v. City of Delta*, 59 Colo. 124, 147 Pac. 662, and *Mack v. Town of Craig*, 68 Colo. 337, 191 Pac. 101, wherein we held that the general statutes did not confer upon either municipality

the right to condemn property outside their corporate limits for the purposes therein sought, are not in point in the case at bar, since neither of these municipalities then was organized or acting under the Home-rule Amendment and, consequently, not the repositories of every power possessed by the general assembly in granting municipal charters generally. For a critical discussion of the general effect of the opinion in *Mack v. Town of Craig, supra,* equally pertinent to that in *Healy v. City of Delta, supra,* we call attention to the case of *Public Service Co. v. Loveland,* 79 Colo. 216 (245 Pac. 493), wherein we held (p. 230) that by necessary implication under the general condemnation statutes, even though there was no express conference, Loveland lawfully might condemn property outside its city limits for a municipal light plant.

■ The final challenge to the power of the city to institute this proceeding is, that it never has given its council or officials authority to so proceed for the purposes here contemplated. As a basis for this argument Fishel's counsel points out, as is the state of the Twentieth Amendment, that there were no express provisions in the Denver charter permitting condemnation within or without the city limits for an air school or bombing range. However, section 209 of the charter, adopted in 1916, expressly gave to the city council "all legislative powers possessed by the city and county of Denver * * * except as otherwise provided by this amendment." In *People ex rel. v. Pickens,* 91 Colo. 109 (11 P. (2d) 349), we said: "As a general rule the powers vested in home-rule cities, not specifically limited by constitution or charter, may be exercised through their legislative authority." As hereinabove expressed, the power of eminent domain for the purposes here involved did repose in the city. Our attention has been called to no specific limitation thereon in Constitution or charter. Thus in its legislative discretion, the council might authorize the exercise of the power, which it did by the adoption of

the air school ordinance. (Ordinance No. 58, Series 1937.)

We now pass to the consideration of Fishel's further specification of errors said to have arisen in the course of the proceedings.

■ By its judgment the trial court allowed interest on the award of the jury from and after the date it announced "that no motion for new trial was necessary." (February 27, 1939). Fishel requested the court to require that interest be computed from the date upon which the city took possession under an interlocutory order therefor, August 10, 1938, and asks us to direct the trial court to add interest for the period between the dates mentioned to the amount awarded by the verdict of the jury. It is said that the refusal of the district court to so proceed was in contravention of the due process clause in the federal Constitution and section 15 of article II, of the Colorado Constitution, which require that: "Private property shall not be taken or damaged, for public or private use, without just compensation." The city contends, as was the view of the trial court, that since our statute—section 17, chapter 61, '35 C.S.A.—requires the jury to award the value "at the time of the appraisement," which means at the time of the trial (*Mulford v. Farmers Co.*, 62 Colo. 167, 161 Pac. 301), it must be considered that every element of damage the property owner has sustained to that time and prospectively by reason of the taking thereof, is covered by the compensation awarded by the jury, and it cites the case of *Union Co. v. Moffat Tunnel Dist.*, 104 Colo. 109, 89 P. (2d) 257, as supporting this contention. For a complete discussion of this general subject and a collation of the authorities with respect thereto, see volume 18 American Jurisprudence, Eminent Domain, sections 272 to 277, both inclusive. Fishel has not seen fit to include the testimony in his bill of exceptions, and consequently we are unable to ascertain whether evidence relating to the value of the use of the property upon any basis was offered or received. Nor is the objection made that the

award of the jury was inadequate or insufficient. In *Mulford v. Farmers Co., supra,* we held that the rental value of lands from the time possession was given to the condemnor, even if a proper element of damage—which question we did not decide—could not be allowed in the absence of evidence showing such value. By the process of exclusion we gather from the record that no instruction asking that the value of possession be considered by the jury was tendered by Fishel, and in their briefs both parties agree that no instruction relating to the allowance of interest was given or request therefor refused. Of the result attaining where the record is in this state, it is said in 18 American Jurisprudence, page 917, section 277: "When there is nothing in the record from which it can be definitely ascertained that the jury did not take into consideration the question of interest in fixing the amount of their verdict, even if no instructions in regard to interest were given by the court, the court cannot after verdict add interest to the sum found by the jury." We think this a correct statement of the law and, therefore, without consideration of the abstract question suggested by the arguments, must decline to direct the trial court to make the addition of interest sought by Fishel.

 The judgment further directed "that all taxes on said property be paid out of the award including these [those] for the year 1938, and subsequent taxes, if any." Fishel says that this requirement is improper and that he should be relieved from the payment of taxes as of August 10, 1938, the date upon which the city took possession of the land. The provision in the decree for the payment of future taxes clearly is invalid. *City of Chicago v. McDonough,* 273 Ill. App. 392; *In re Mayor of New York,* 58 N.Y.S. 58, and 69 N.Y.S. 742. The effect of the condemnation decree was to transfer any tax liability from the land to the money in the registry of the court, which was placed there as the equivalent of the land by virtue of the condemnation

proceedings. *Board of Capitol Managers v. Brasie,* 72 Colo. 153, 210 Pac. 63. The city asserts that section 224, chapter 142, '35 C.S.A., providing that as between the grantor and grantee in a conveyance of real estate, in the absence of an express agreement otherwise, the grantor shall pay the taxes when the conveyance is made after June 30th, controls here, and that since possession did not pass until August 10, Fishel should discharge the entire 1938 tax, which seems to be all that was unpaid. In our opinion this statute, applying as it does to voluntary conveyances, is not applicable where property is taken by condemnation proceedings. Fishel's property was appropriated for a public purpose on August 10, 1938, after which date he was entitled to be relieved of all burdens incident to his ownership, including liability for taxes. 18 Am. Jur., p. 918, §278. The judgment should be so modified as to prorate the 1938 tax on such basis.

 Although, as we have mentioned, Fishel makes no assignment of error grounded upon the insufficiency or inadequacy of the compensation awarded by the verdict, paradoxically he charges that there was error in the given instructions on market value and that the court transgressed in refusing to give an instruction on this subject tendered by him. It is elementary that legitimately, error can be assigned only on the basis that prejudice occurred as a result of the action of which complaint is made, thus Fishel may not assail the instructions which gave legal guidance to the jury in reaching a result concerning which he registers no dissatisfaction. Further, a consideration of the questions advanced by the assignments of error under discussion properly would require an examination of the evidence which Fishel did not see fit to incorporate in his bill of exceptions.

The cause is remanded with directions to modify the judgment as it relates to the subject of taxes in accord-

ance with the view we have expressed. In all other particulars it is affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Young not participating.