6 N.Y.2d 1 (1959)
Norman La Porte et al., Appellants,
v.
State of New York, Respondent. (Claim No. 33115.)
Court of Appeals of the State of New York.
Argued January 16, 1959.
Decided May 14, 1959.
Dante M. Scaccia for appellants.
Bernard L. Bermant, amicus curiæ, in support of appellants' position.
Louis J. Lefkowitz, Attorney-General (Julius L. Sackman and Paxton Blair of counsel), for respondent.
Judges DESMOND, DYE and BURKE concur with Judge VAN VOORHIS; Chief Judge CONWAY dissents in an opinion in which Judges FULD and FROESSEL concur.
*4 VAN VOORHIS, J.
Under section 347 of the Highway Law, added in its original form by chapter 914 of the Laws of 1942, title to property necessary for State Thruways and bridges is acquired by the filing in the office of the Secretary of State by the Superintendent of Public Works of a description and map of the property under condemnation and by filing a copy thereof in the County Clerk's office in each county where the property is located. A copy of the description and map is delivered to the Attorney-General, "whereupon it shall be the duty of the attorney-general to advise and certify to the superintendent of public works the names of the owners of the property, easements, interests or rights described in the said description and map, including the owners of any right, title or interest therein. Upon such certification, the superintendent of public works shall cause a notice of appropriation to be filed and recorded in the office of the county clerk or register of the county in which such property is situated." Service upon the property owners is required to be personal, if the person to be served can be found within the State, or if service is not dispensed with for good cause. In the case of a public improvement such as the New York State Thruway, it was manifestly impossible to ascertain and serve immediately and at one time the owners of all interests in all of the parcels of property acquired. The effect of this statute is to require such notice to be served as soon as is reasonably possible. Although the provisions of this section of the *5 Highway Law regarding notice to property owners are not claimed to render the statute invalid, they are noted in view of the comment in the dissenting opinion that unless the judgment appealed from is reversed there is no duty on the part of the State to serve property owners at any time.
Claimants-appellants in the instant case own a house and lot in the County of Albany. The frontage is 100 feet on St. Michael's Lane, and the lot is 110 feet in depth. The house is not taken. Thirty feet has been appropriated for the New York State Thruway along one side of the lot. After appropriation, the house is 5 feet instead of 35 feet from the side line. No question is before the court concerning appellants' right to be paid the value of the land appropriated, together with consequential damage to the house and the remaining portion of the lot. This appeal concerns only the question of interest upon the award. The appropriation map and description were filed in the Albany County Clerk's office on June 1, 1953, and were served personally on appellants during the latter part of April, 1955. Their claim was filed with the Court of Claims on April 7, 1955. Interest was conceded to appellants for six months following the vesting of title in the State on June 1, 1953 (the date of filing of the description and map in the Albany County Clerk's office), but interest was suspended at the end of this six months' period, and no further interest has been conceded until the filing of the claim on April 7, 1955. From then on there is no dispute that interest is to be paid. The reason for disallowing interest during this interim is the language of subdivision 1 of section 19 of the Court of Claims Act directing: "If a claim which bears interest, is not filed until more than six months after the accrual of said claim, no interest shall be allowed between the expiration of six months from the time of such accrual and the time of the filing of such claim."
It is argued that appellants did not know, until several weeks before they were personally served with notice of this appropriation, that 30 feet along the side of their lot had been covered by the map and description on file in the County Clerk's office, with the consequence that they are not collecting interest from six months afterward until the filing of their claim with the Clerk of the Court of Claims. Subdivision 1 of section 19 of the Court of Claims Act is attacked as unconstitutional on the *6 basis that just compensation to owners requires the allowance of interest from the time of the appropriation, rather than from the date of the filing of their claim or from the taking of possession for Thruway purposes. The Court of Claims upheld claimants' contention, but the Appellate Division reversed and dismissed their claim to interest, stating that "if nothing occurred to bring home knowledge of the taking to claimants, they had the full use and benefit of the land during the interval and could not reasonably expect both interest and possession." We agree with this view of the case.
Where title has passed to the State or other public body, and the value of the property is later to be determined as of that date, interest until the adjudication of the award is held to be payable as part of just compensation to the owner for the appropriation of his property (Matter of City of New York [E. 178th St.], 107 App. Div. 22, 25, affd. on opinion of G. L. INGRAHAM, J., 183 N.Y. 571; Matter of Minzesheimer v. Prendergast, 144 App. Div. 576, affd. 204 N.Y. 272; Matter of City of New York [W. 151st St.], 222 N.Y. 370; Matter of City of New York [Westchester Ave.], 217 App. Div. 381; Jacobs v. United States, 290 U. S. 13). Upon the other hand, a condemnee is not allowed interest during periods while he has had an equivalent use of the property (Matter of Mayor of City of New York, 40 App. Div. 281, followed in Matter of Riverside Park, 59 App. Div. 603, 605, affd. 167 N.Y. 627). In Matter of City of New York (Newton Ave.) (219 N.Y. 399, 407-408) it was said, per CARDOZO, J., "We are told that great hardship will result to the city if it is charged with interest since the appropriation in 1895. But we do not now decide that it is chargeable with interest. That question has not been certified to us. The Albany Post road, although nominally closed in 1895, was not physically closed until 1914. Up to that time the adjoining owners had the same use of it that they had in former years. It will be for the courts below to determine, when the commissioners make their report, whether the value of the beneficial use may be set off against interest on the award [citing cases]." (Italics from original.)
It is clear that no constitutional mandate is violated by the denial of interest during periods while the owner has enjoyed *7 the full beneficial use of his premises (Hamersley v. Mayor of City of N. Y., 56 N.Y. 533; Donnelly v. City of Brooklyn, 121 N.Y. 9, 21; Shoemaker v. United States, 147 U. S. 282, 321).
Under these decisions interest in condemnation cases until the award is a substitute for the use of real property, and, although the burden is ordinarily upon the condemnor to prove by way of offset that the value of the use has been at least equal to the interest, that does not render unconstitutional subdivision 1 of section 19 of the Court of Claims Act. Under this statute, interest accrues automatically during six months after the appropriation, and the running of interest is never suspended if the property owner files his claim before the expiration of six months. Moreover, even if he omits to file within six months, he may do so afterward which sets the interest running again. It is not too much to presume, in order to sustain the constitutionality of this section, that the property owner would file a claim if he were at any time curtailed in the dominion which he has had occasion to exercise over his property. It is said that he may not have had actual notice of the appropriation inasmuch as he is not obliged to keep himself informed of the papers in the office of the County Clerk. That may be true, but if these claimants had desired to sell or to rent and had been prevented from doing so, or had been dispossessed, it would have been brought to their attention that the power of eminent domain was being exercised, with the right on their part to file a claim. The very circumstance that it is argued that these claimants were not aware that the appropriation map and description had been filed indicates that they were not disturbed in their use of this property. A claimant cannot be heard to attack the constitutionality of this statute by contending that he should be awarded interest to compensate him for a use of which he did not know that he had been deprived.
The possibility mentioned in the dissenting opinion herein that a property owner might make improvements to his land after the filing of the appropriation map and description has nothing to do with the payment of interest. That possibility exists regardless of whether the judgment appealed from herein be reversed or affirmed. The Thruway statute is not being attacked on any ground that it provides insufficient notice to *8 landholders. Section 347 of the Highway Law is not challenged by the parties. Only subdivision 1 of section 19 of the Court of Claims Act is alleged to be unconstitutional.
Nothing to the contrary was held in Matter of City of New York (Grand Blvd.) (212 N.Y. 538); in Matter of City of New York (Bronx Riv. Parkway) (284 N.Y. 48, affd. 313 U. S. 540), or in Jacobs v. United States (290 U. S. 13), in none of which was the controversy now before the court presented.
The judgment appealed from should be affirmed, without costs.
Chief Judge CONWAY (dissenting).
Subdivision 1 of section 19 of the Court of Claims Act provides: "If a claim which bears interest, is not filed until more than six months after the accrual of said claim, no interest shall be allowed between the expiration of six months from the time of such accrual and the time of the filing of such claim."
Old section 24, the precursor of the above-quoted section, was substantially the same. The application of the provision to other than eminent domain cases is clear and fair; they generally involve a time of "accrual" that is accrual by every standard, and facts which clearly bring home to the party concerned the fact that he has a claim of some kind  or that he may have, and should inquire after it. And until recently, eminent domain cases did not present any problem, because in them, too, procedures were such that the party concerned was fully apprised of everything that was taking place. But the Legislature amended eminent domain statutes, and enacted others, wherein a very significant change was effected. Instead of the title to the property passing to the State upon personal service of a notice on the condemnee, as had previously been the case, title was decreed to pass upon the State's mere filing of a map and description in the office of the County Clerk of the county wherein the condemned property was situate. The Legislature very apparently appreciated the implications of the change it had wrought, for it amended subdivision 1 of section 10 of the Court of Claims Act to assure that a condemnee would be in no way prejudiced in the assertion of his claim by any misunderstanding or misconstruction of the word "accrual", as used in that section, dealing with the Statute of Limitations in eminent domain cases. As originally enacted, subdivision 1 of section 10 of the Court of Claims Act provided: "A claim for the *9 appropriation by the state of lands, or any right, title or interest in or to lands shall be filed within two years after the accrual of such claim."
Traditionally, statutes providing for the taking of private property enacted that title would pass not upon the mere filing of the map and description, as the statute at bar (Highway Law, § 347) provides, but only upon personal service on the condemnee of notice of the taking. Under those statutes, no problem arose. Since title did not pass until personal service on the condemnee, the claim did not accrue until then. Thus the two-year Statute of Limitations upon the claim (§ 10, subd. 1) did not begin to run until then, and neither did the six months (after which interest would stop) begin to run until then (§ 19, subd. 1). In recognition of the recent changes in appropriation statutes, providing for the passing of title upon filing of a map and description in the office of the County Clerk, and in obvious recognition of our decision in Matter of City of New York (Grand Blvd.) (212 N.Y. 538), which held that in eminent domain cases the filing of the map may not be constitutionally construed as notice to the condemnee, the Legislature in 1948 (L. 1948, ch. 688) amended subdivision 1 of section 10 of the Court of Claims Act to add immediately after the word "claim" above: "or where title is vested by the filing of a description and map in the office of the county clerk or register, then within two years after personal service of a copy of such description and map and notice of filing thereof * * *."
Now the word "accrual", as applied to cases in which the filing constituted the taking, meant personal notice to the condemnee, i.e., the cause of action, for Statute of Limitations purposes, would not accrue until such personal notice. For other purposes it could be construed as having accrued at the filing, e.g., we may assume that the condemnee, if informed of all of the facts, would not have to wait until personal notice before filing his claim (as the condemnees at bar did not wait). But for Statute of Limitations purposes at least, there is no accrual until personal notice. Now no change was made in subdivision 1 of section 19 (quoted supra, p. 8), which deals with interest on a claim against the State. No change was necessary, although a corresponding amendment would have obviated the instant difficulty. If by the amendment of subdivision 1 of section *10 10 "accrual" was in effect postponed, as to commencing the running of the Statute of Limitations, until personal notice served on the condemnee, why should "accrual" as mentioned in subdivision 1 of section 19 be construed as referring to the filing of the map alone? Such a construction completely ignores our decision in Matter of City of New York (Bronx Riv. Parkway) (284 N.Y. 48, 54, affd. 313 U. S. 540). In that case it was determined beyond all possible doubt that just compensation under our State Constitution (art. I, § 7) and under the due process clause of the Fourteenth Amendment to the Federal Constitution must include "some sum in addition to the bare value of the property at the date of taking for the delay in making payment". It seems clear, especially in view of that holding, that the legislative intent in amending subdivision 1 of section 10 was to postpone until personal notice the running of the Statute of Limitations on the claim including such Statute of Limitations as aims at the stopping of interest on the claim, since interest (absent other consideration, and there is none here) is a constitutional part thereof. That should be sufficient, in eminent domain cases, to enable us to construe "accrual" of subdivision 1 of section 19 as referring to the "personal service" of subdivision 1 of section 10. There is nothing in the relevant statutes to indicate that the Legislature purposed to substitute some other consideration to compensate the condemnee for the delay in paying him the price of his land. Interest is the only consideration provided for, and interest accompanies the claim from beginning to end  unless, of course, some procedure satisfactory to the Constitution is provided to keep the interest down. No constitutional procedure for so doing has been provided here, and a contrary holding therefore would amount to an unconstitutional reduction in the just compensation to which the condemnee is unquestionably entitled under our Bronx River Parkway decision. To decide otherwise would be to hold that we must construe subdivision 1 of section 19 without reference to changes in the law with which it must be brought into harmony; that we must continue to apply it to its letter, in utter disregard of both legislative action affecting it and constitutional requirements controlling it. Subdivision 1 of section 19 is a statute that aims at general application to claims against the State; it does not treat exclusively or specifically *11 of condemnation claims. Yet the latter are unique, today, because of the peculiar factual possibility now presented in such cases: that the claim may "accrue" when the claimant knows nothing about it and when nothing has occurred to charge him with knowledge of it. In such circumstances, we should not continue to construe subdivision 1 of section 19 as if no change had occurred in the law, because a change there has been  and one which brings new and substantial implications to the application of the section. And constitutionally, we cannot so construe it; under both Federal and State Constitutions the claim and interest on it are but a single entity, the two together being just compensation. If mere filing of the map cannot be taken as notice sufficient to begin the running of a time limitation on the claim, then it cannot be taken as notice sufficient to begin the running of a time limitation that reduces interest on the claim. That must be our holding, in our judgment, unless we are prepared to overrule our Bronx River Parkway decision, holding interest as constitutionally integrated in the claim, or our Grand Boulevard decision, holding the filing of the map insufficient to apprise the condemnee of the taking.
Here the claim was filed before personal notice was served on the condemnees, so we know that they had found out about the taking some time prior to personal service. But we do not know exactly when. The record is barren of any data thereon, and the State did not even undertake to litigate the question. Yet if we are to uphold the Grand Boulevard case, we would have to know precisely when notice was brought home to the condemnees, since at the very minimum that much proof would be required to tell us when the six-month period began to run on the interest. We do not wish to be on record as saying that such six months would begin to run at such time, since we are of opinion that the Legislature intended here that the running of the six months be postponed, along with the two years on the claim, until personal notice to the condemnee. So profuse is the appropriation statute, under which this property was taken (Highway Law, § 347), with regard to notifying the condemnee of the taking, that we find no necessity for going beyond legislative words in order to reverse. Under no manner of interpretation could the State's delay in making personal service on the condemnees at bar be justified. The State notified the claimants *12 personally approximately 22 months after the map was filed and title had passed. By the widest stretch imaginable, the appropriating statute could not condone that outrageous delay. We have searched the record and the briefs for some explanation, however slight, for that delay; not a word of excuse is offered. For 22 months the State owned the claimants' property before bestowing upon them the courtesy of telling them as much. The appropriating statute contemplates expeditious service of notice on the condemnee. We wonder what manner of interpretation could find a lapse of 22 months to be a reasonable requirement in the effectuation of service. The condemnees' house was not taken  the strip taken began at a line 5 feet northeast of the house. The claimants were in continued occupation of the house at all times, as found by the Court of Claims. Personal service could have been effected without any difficulty whatever, and the statute of appropriation provides for personal service. An interpretation would seem difficult which could find in that statute an approval of a 22-month delay in service and at the same time a punishment meted out to the condemnee for the delay brought about by the State. We would have to hold that the State's taking of possession after title has passed constitutes notice of the taking to the condemnee  and that it is all the notice that the condemnee requires to affect a most substantial aspect of his claim: the interest on it. What constitutes such taking of possession by the State would be a question of fact for the trial court  but here, to repeat, the State never sought to litigate it. It is of small moment that the two years after which suit is barred does not begin until some time later. What consolation is it to the condemnee that he may bring suit during a long stretch of time, when the interest on his money has been suspended because of the ignorance in which he has been kept by the laxity of the State's agents. And how may we decide that the taking of possession by the State constitutes notice to the condemnee when the Legislature itself has never so enacted but, on the contrary, expressly provided for personal notice to be served on the condemnee? At bar the provision for personal notice is set forth in the very same statute that authorizes the appropriation (Highway Law, § 347). Certainly if the State has appropriated the property, it is going to take possession of it. And when it takes possession of it, *13 the condemnee will have notice of the taking. Why were the provisions for personal notice to the condemnee enacted in the appropriating statute if the taking of possession be all that is necessary? Under such interpretation, personal service becomes a discretionary choice for the State's agent. Only the running of the two-year Statute of Limitations is held up by it. What does the State lose if personal service is never effected? The claim against the State would become absolutely static six months after the map was filed. Why should the State make personal service at all, in that case? If the claim against the State remains alive forever, the State loses nothing because of the delay. Until the claim is filed, it contains but six months' interest and nothing more. Under such ruling, the most conscientious of State agents lose all incentive to make personal service on the condemnee expeditiously. The delay brings no loss to their principal.
Even if it were the law that the taking of possession does constitute notice to the condemnee of the fact of the taking, there is not one scrap of evidence in the record at bar which could even ground an inference of when the State took possession.
May we say that, if the State did not take possession, so that the condemnee knew nothing of the taking, what he does not know does not hurt him? That is untrue (see numbered paragraph 8, infra). And such argument assumes both of the following:
(1) that continued possession of the property taken is the automatic equivalent of interest on the claim and
(2) the condemnee is not entitled to both possession and interest.
Number (1) above is a proposition that has never been enunciated by this court. The cases which have denied a claimant interest show that there was no automatic equation of the value of possession with the amount of interest on the claim. The value of possession or the price of delay in payment was "considered and allowed for" (Matter of Mayor of City of N. Y., 40 App. Div. 281, 287), or the delay was "taken into consideration" in the making of the award (Matter of Department of Public Parks, 53 Hun 280), or the statutes of appropriation manifested such intent as grounded the court's presumption *14 that the award took into consideration the value of continued possession or the price of delay (Hamersley v. Mayor of City of N. Y., 56 N.Y. 533; Shoemaker v. United States, 147 U. S. 282). At bar the value of possession (if there was continued possession during all of the time in question, as the court assumes without foundation) was never considered because the State failed to litigate it. And there is no possibility of a presumption here. Unlike the cited cases, it was the Court of Claims and not a commission which made the award. The Court of Claims did not presume that the award took these matters into consideration because it was that court which made the award. And the Court of Claims could not have made such a presumption, because the instant statute of appropriation (Highway Law, § 347), unlike the unusual statutes that grounded the presumption in the cited cases, contemplates nothing but the immediate passing of title to the State upon filing of the map, and the immediate right of the State to take possession of the property. And the Court of Claims denied a motion by the State, after the proceeding was terminated and the award made, to amend the decision to eliminate interest beginning six months after the filing of the map until the claim was filed by the condemnees. That disposition was fully in line with precedent. Possession is not the automatic equivalent of interest. (See Matter of Westchester County Park Comm., 244 App. Div. 725.) But in our case the Appellate Division has reversed the Court of Claims.
Number (2) above, to the effect that the condemnee is not entitled to both possession and interest, is predicated on previous cases involving a most outstanding factual difference. In those cases the condemnee in possession was still the owner of the property; title had not passed; the taking was effected under the old statutes of appropriation, which passed title upon personal service of notice and not upon mere filing of the map. And possession of the land by the condemnee in those cases, we should add, was always present as a fact; at bar the claimants' continued possession of the appropriated parcel has not been proved, and it would of course be the burden of the State to produce evidence of it. Here what the court overlooked is the fact that title had passed to the State  that the condemnee is nothing more than a tenant. The court's decision is that he is *15 a tenant paying rent on the State's enforced terms. That is the only result of holding possession (again, assuming there was possession) to be the absolute equivalent of interest. It is noteworthy that the only foundation for the assumption that the claimants continued in possession of the appropriated strip of land is a finding made by the Court of Claims, which we have previously adverted to, which had nothing to do with the appropriated strip. The court seizes upon the Court of Claims' finding that claimants "resided there." That court made such finding only with reference to the house, which we may assume the claimants occupy to this day. It was uttered in the context that sought to show how easy it was for the State to make personal service on the condemnees, who continued all the while to reside in the house, which was not taken. The "there" clearly and unequivocally refers to the house, so that the court's finding is in no way germane to the question of whether and until when the condemnees continued in possession of the appropriated strip.
Without any precedent in the cases, and without a word of invitation from the Legislature, the decision appealed has wrought a number of unique results. It is impossible to determine which of the following phenomena will appear in a given case, but each and every one of them is a factual prospect or a court-approved procedure engendered in this case for the first time. We set forth what the court below has accomplished by its holding:
1. Assumed that the claimants at bar continued in possession of the appropriated strip of land during all of the time in question, with no basis in the proof for the assumption.
2. Enacted that the State may, by withholding notice of the taking from the condemnee  after the taking is a fact  turn the condemnee into a paying tenant, whether he likes it or not.
3. Enacted that rent for such tenancy shall be the absolute equivalent of interest on the price of the land taken, and that the value of the enforced tenancy need not be the subject of any factual investigation looking to the determination of the land's true rental value.
4. Enacted that notice of the taking need not be personal, but that the State may stop all interest beyond six months' worth on the condemnee's claim simply by filing the map and sitting *16 back  which means that as concerns a most substantial aspect of the situation  the interest on the claim  the notice given the condemnee need not be personal service, as set forth in the appropriating statute. There need be (a) either no notice at all, or (b) only such notice as the condemnee may have from the State's taking of possession. Which of the two the court applies to the instant case cannot be determined. Either course has been labelled satisfactory, in the alternative.
5. Created a new category of matter to be litigated in condemnation cases, in the event that (b) under paragraph 4, above, is applied. Thus, if a claimant by some obscure means can prove that he was not in possession of the appropriated land after the taking, so that it cannot be found that he had an enjoyment of it equivalent to interest on the claim (the alternative suggested by the court when the State has not taken possession), then the moment when the State does take possession becomes germane, for it apparently determines when the out-of-possession claimant had notice of the taking, and thus when the six months begins to run (after which interest stops). And what is it that will constitute the taking of possession? That is another burden of evidence suddenly imposed on condemnation litigants. If all of this seems a trifle confusing, it is.
6. Removed all incentive from the State's agents to make prompt personal service on the condemnee, as contemplated by the statute of appropriation, by establishing rules which ensure that the State will never be the loser by its own delay. Its liability will forever be the value of the land taken as of the time of filing of the map, plus six months' interest thereon, until the claim is filed. And if notice be not served personally on the claimants for 22 years, instead of 22 months as at bar, and the claim is not filed until after such duration, the State's liability will still not be a penny greater. Under such rules, why should the State serve personal notice at all? What does it matter to the State that the two-year Statute of Limitations on the claim will not begin to run until after such service of notice? If the proof is difficult, it is just as difficult after such lapse of time for the condemnee to prove the value of the land as for the State to disprove it.
7. Deprived the condemnee of the use of the time between the passing of title and his learning of its passing  time which the *17 condemnee might well use to search for premises more suited to his needs and tastes than those remaining to him after the State has taken what it wishes.
8. Opened the door to the absolutely unjustifiable expense of improving condemned land. This we deem the most outstanding deficiency in the court's holding. If a condemnee remains in possession after title has passed  knowing nothing of its passing  he will frequently improve the land on the very reasonable assumption that he owns it. We would not include such improvements as the building of another house or anything of that nature, for we may assume that a survey would precede such building and we would even go so far as to assume that in the course of it a search of the County Clerk's records would be made, which would reveal the taking by the State. But we allude to other substantial and often expensive improvements which would not involve a search of title or records: the adding of a wing to a building, the sinking of a well, the placement of a sprinkling system, the landscaping of a garden, the installation of a pond or pool, or playground equipment for children  all of the foregoing being clearly within what the condemnee justly considers the boundaries of his property. The possibilities here are vast. Who is ultimately liable for the improvements? The condemnee or the State? Either way, the outlay is unjustified. Either the condemnee takes the loss, which is grossly unfair to him, or the people of the State sustain it, which is just as unfair to all of us. The people are entitled to expect more careful treatment of their interests, and it would certainly seem that the Legislature did not plan these unfortunate results.
We do not see in the court's holding any foundation in precedent, in statute, in rule, in practical contemplation, or in simple fairness. We may anticipate a mass of interesting (to say the least) litigation under it. Certainly the State's agent may elect to provide the personal notice promptly, as the statute contemplates, and that would solve everything. He did not do so here. And it would seem that there should be something more binding upon the State's agents than their own discretion  and the statute (Highway Law, § 347), in our opinion, was intended to be so binding. Perhaps the Legislature will provide the remedy. As we see it, this case should not be so disposed of as to require a remedy.
*18 The judgment entered on the order of the Appellate Division should be reversed, and the original judgment of the Court of Claims reinstated, with costs in this court and in the Appellate Division.
Judgment affirmed.