## No. 18,488.

HENRY W. TOLL, ET AL. *v.* CITY AND COUNTY
OF DENVER, ET AL.
(340 P. [2d] 862)

Decided June 15, 1959. Rehearing denied July 6, 1959.

Mr. JOHN M. EVANS, Mr. ORA H. GEORGE, for petitioners.

Mr. JOHN C. BANKS, Mr. GLEN G. SAUNDERS, Mr. WILLIARD S. SNYDER, Mr. TERRY J. O'NEILL, for respondents.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

THIS is an original proceeding in the nature of certiorari or prohibition directed to the District Court of Gilpin County, by which the complainants here seek to restrain further proceedings in a condemnation action pending in that court. Pursuant to the prayer of the complaint a rule to show cause was issued. The action has its origin in a proceeding in eminent domain instituted by the City and County of Denver against defendants Toll and others to condemn certain flowage easements and channel improvement rights in South Boulder Creek upon lands owned by the defendants in Gilpin county. We will refer to the complainants here as the Tolls, and to the respondents as Denver and the Court, as occasion requires.

In its petition in condemnation filed in the Gilpin county district court, Denver alleges its character as a municipal corporation organized as a home rule city under the provisions of Article XX of the state constitution; that it is the owner of a municipal water works system and plant, and of certain water rights out of tributaries of the Colorado River supplying water to the

City and County of Denver, its inhabitants and others; that the waters of the Colorado River so owned and diverted are transported through the Moffat Tunnel and discharged into South Boulder Creek, whence they are carried to Denver through a system of reservoirs, channels and conduits. That the waters to be transported through the Moffat Tunnel and discharged into South Boulder Creek will be in addition to the normal flow of that stream and will increase the volume of water therein, and will require on behalf of Denver the right to overflow the banks of the stream and the right to clean, straighten, deepen, widen and improve the channel thereof; that the easements necessary to be acquired over and upon the property of defendants are particularly described in an exhibit attached to the petition; that negotiations carried on in good faith between Denver and the Tolls with respect to the compensation to be paid for such rights have failed of agreement, and that the Board of Water Commissioners of the City and County of Denver, which under provisions of its charter is vested with the exclusive authority to control, manage and operate said water system, by resolution duly adopted at a meeting of said Board held on the 19th day of February, 1957, declared a necessity for the immediate taking by the City and County of Denver through its Board of Water Commissioners, of the easements of flowage and channel improvements described in the petition.

To this petition the Tolls filed a number of motions, among them a motion to dismiss on the ground of lack of jurisdiction of the district court of Gilpin County of the subject matter of the petition; a motion to state separately and to dismiss; a motion for determination of necessity and public use; a motion for a more definite statement or bill of particulars; and lastly a request for a jury trial. The motions to dismiss, to state separately and for determination of necessity and for a more definite statement were argued and overruled, although after-

ward on July 20, 1957, at the request of counsel for Tolls, a hearing was had on the motion for a determination of necessity and public use, at which the testimony of engineers employed by Denver was taken. No evidence was offered by the Tolls. Following this hearing the trial court made the following findings and order:

"After hearing and examining the evidence adduced and the statements of counsel, THE COURT FINDS, DETERMINES AND ORDERS, that the City and County of Denver, acting by and through its Board of Water Commissioners did not act unreasonably when it determined that it was necessary to take the easements and the rights described in the Petition in Condemnation. The Court finds that the evidence before it clearly shows that the City and County of Denver, acting by and through its Board of Water Commissioners, has regularly exercised its authority without fraud, unreasonableness or other taint which would vitiate its actions, and there was no evidence to the contrary. * * *."

Fearful of the probable course of the litigation as indicated by the trial court in ruling on the motions and apprehensive that their rights will be impaired and their property taken without due process of law, the Tolls invoke the original jurisdiction of this Court seeking to procure dismissal of the proceedings in the district court.

In support of their complaint here, the Tolls present and argue thirteen points, ranging from a claimed defect of parties to the burden of proof. Of the thirteen points presented only two may be properly determined in this proceeding under Rule 106, the authority of this Court extending no further than to determine whether the trial court exceeded its jurisdiction or abused its discretion.

The two matters to which we direct our attention are stated and identified in the brief of complainants as follows:

11. The statute applicable to the condemnation pro-

ceedings is Article 6, Chapter 50, Colorado Revised Statutes, 1953; such statute provides that the action must be commenced in the District Court in which the City and County is situated; therefore the District Court of Gilpin County has no jurisdiction.

12. Under the facts and purposes of the condemnation case Denver has no authority under the Constitution, Charter, Statute or Ordinances to condemn parcels for flowage easements and "channel improvement" rights.

1. In support of the first of the above propositions it is argued that in a condemnation proceeding Denver is restricted to proceedings under C.R.S. '53, 50-6-1, et seq., referred to by the Tolls as the 1911 act; that no authority exists for proceedings by a municipality under the general eminent domain statute (C.R.S. '53, 50-1-1, et seq.) to which they refer as the 1877 act, and under which it is apparent Denver is proceeding in this action.

They urge that while no decision of this court has squarely decided the question, a number of decisions have discussed and applied the 1911 act where Denver has been involved in eminent domain proceedings. Among the cases referred to are *Alexander v. Denver,* 51 Colo. 140, 116 Pac. 342; *Denver v. Tondall,* 86 Colo. 372, 282 Pac. 191; *Wassenich v. Denver,* 67 Colo. 456, 186 Pac. 533, and *Heimbecher v. Denver,* 97 Colo. 465, 50 P. (2d) 785. To this list might be added *People ex rel. Bear Creek Development Corporation v. District Court,* 78 Colo. 526, 242 Pac. 997.

Respondents contend that not only does the 1911 act not apply to proceedings such as that before us, but that the provisions of Article XX of the state constitution, coupled with the general eminent domain statute (50-1-1, et seq.) are controlling.

The statutory provisions referred to, so far as pertinent here, read as follows:

50-1-2. (1877 Act.) "In all cases where the right to take private property for public or private use without

the owner's consent * * * has been or shall be conferred by general laws or special charter, upon any corporate or *municipal authority* * * *, and the compensation to be paid for in respect of property sought to be appropriated or damaged for the purposes mentioned, cannot be agreed upon by the parties interested; * * * it shall be lawful for the party authorized to take or damage the property so required; *to apply to the judge of the district or county court, * * * where the property or any part thereof is situate, * * *.*"

The so-called 1911 act upon which the Tolls rely provides the following:

50-6-1. "Whenever *in* a city of the first class or second class or *in* a city, or city and county, organized under a special charter, or created by the constitution of the state of Colorado, or amendment thereto, the council thereof, or other municipal board having authority by charter or statute, shall pass a resolution or ordinance to establish, construct, extend, open, widen or alter any street, * * * or to build, acquire, construct or establish any public building or any other public work or public improvement, said city, or city and county, shall have the right to take, damage, condemn or appropriate by right of eminent domain such private property as may be required in the manner provided for in this article." (Emphasis supplied.)

Section 50-6-2 following provides that the city attorney for any such city shall apply to the district court of the district in which the city or city and county is situated by petition stating the general nature of the improvement proposed. Following sections prescribe the procedure to be followed in actions instituted under the act.

It is argued that since the general eminent domain statute (50-1-1, et seq.) was the older one, and the 1911 act relating specifically to cities or cities and counties, Denver is restricted to proceedings under the later statute; that insofar as the older statute applies to cities of

the first or second class or to a city and county, it was repealed by the later statute, hence no present authority exists for the commencement of an action in eminent domain in the courts of a county other than that in which the city is located.

We are not concerned with the status of these statutes prior to 1953 when the General Assembly revised and adopted the laws of Colorado as the Revised Statutes of 1953. Both being included in such revision, both are to be given effect and are deemed to be complementary rather than conflicting. This being the case Denver may proceed under either, selecting that best suited to the circumstances of the particular action. This fact coupled with the definite authority to condemn under Article XX of the constitution which provides that Denver " * * * shall have the power, within and without its territorial limits, to construct, condemn and purchase, acquire, lease, add to, maintain, conduct and operate, water works * * * and everything required therefor, for the use of said City and county and the inhabitants thereof," is ample to authorize Denver to proceed as in this action.

In commenting on this provision of Article XX, the court in *Fishel v. Denver,* 106 Colo. 576, 108 P. (2d) 236, said:

" * * * this amendment was designed to give as large a measure of home rule in local and municipal affairs as could be granted under a republican form of government, we have no doubt that the people of Colorado intended to, and in effect did, thereby delegate to Denver full power to exercise the right of eminent domain in the effectuation of any lawful, public, local and municipal purpose."

We conclude that Denver proceeded properly in bringing its action in the district court of the county where the property or some part thereof is situated.

2. It is asserted that there is no authority in either the statutes or the constitution to condemn "flowage

easements or channel improvements," and that in the absence of specific authority therefor, no such right exists. We are not impressed by this argument. In *Town of Lyons v. City of Longmont* (1912), 54 Colo. 112, 129 Pac. 198, the same contention was advanced, it being asserted that since "pipeline" was not specifically set forth in a provision of the constitution involved, that no authority existed for the condemnation of a right-of-way for a pipeline. In disposing of this contention the court said:

"It does not mention a pipeline, but its evident object was to permit a right of way for a conduit through which to convey water for the purposes designated, and hence, the kind of conduit employed and utilized is of no material moment."

In *Town of Glendale v. City and County of Denver* (1958), 137 Colo. 188, 322 P. (2d) 1053, we said:

"Although sewers are not expressly mentioned in the Constitution, the powers enumerated therein are by way of illustration and not of limitation. The necessary correlative to "water works" expressly granted in the Constitution is a facility to carry off that same water."

 So in the case before us no mention is made of "flowage easements" or "channel improvements" in either the constitution or the statutes, but from what we have said, if Denver has the right to condemn private property for the construction or expansion of its water works, it has the right to acquire by condemnation a right-of-way for the transportation of its water diverted through the Moffat Tunnel for delivery to its reservoirs or other storage facilities. That it proposes to utilize the existing channel of South Boulder creek as a conduit for that purpose does not detract from that right; nor does the fact that such utilization involves the taking of sufficient land to accommodate the increased flow of water and the widening and deepening of the channel for the purpose of confining such increased volume to the channel as improved. We conclude that Denver is vested

with ample authority under both the constitution and the statutes to condemn for the purposes indicated the flowage easements and channel improvement rights it seeks to acquire.

As observed above complainants have presented thirteen grounds upon which they seek to annul the proceedings in the district court. All but the two we have treated are reviewable only by writ of error. In *People ex rel. Bear Creek Development Corporation v. District Court,* supra, it was said:

"The greater part of the argument of the parties has been taken up with questions on the merits of the case below, especially of the powers of the city to condemn land outside her limits and the constitutionality of the act of 1911. These questions are not before us. We are urged to decide them notwithstanding, * * *. That we have sometimes done such things when we were asked, and that we often say more than necessary does not justify us in deliberately repeating the offense. So far we have never used our constitutional supervisory power to prevent error in the lower court."

Concluding, as we do, that the trial court is not proceeding without or in excess of its jurisdiction, and has not abused its discretion, the rule to show cause heretofore issued herein should be and is discharged.