No. 25173.

FRANK KARSH AND IVAN L. GOLDSTEIN, INDIVIDUALLY AND DOING BUSINESS AS ADVERTISING DISPLAY CO.; JACK JENSEN; CJY & V CORPORATION, A COLORADO CORPORATION; GOLD STAR MEAT CO., INC., A COLORADO CORPORATION; MOSES KATZ; EUNICE KATZ; AND THE CHEMICAL SALES CO., INC., A COLORADO CORPORATION *v.* THE CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION EXISTING UNDER AND BY VIRTUE OF THE CONSTITUTION AND LAWS OF THE STATE OF COLORADO; THE CITY COUNCIL OF THE CITY AND COUNTY OF DENVER, SOMETIMES ALSO KNOWN AND REFERRED TO AS THE BOARD OF COUNCILMEN OF THE CITY AND COUNTY OF DENVER; GRACE R. BINDERUP, LOUIS A. BINDERUP, AND GLEN L. FISHER.

(490 P.2d 936)

Decided November 22, 1971.

CREAMER AND CREAMER, GEORGE LOUIS CREAMER, for p'aintiffs-appellants.

MAX P. ZALL, City Attorney, EARL T. THRASHER, Assistant, ROBERT M. KELLY, Assistant, DAWSON, NAGEL, SHERMAN & HOWARD, ROBERT M. JOHNSON, for defendants-appellees and plaintiffs-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

IN a declaratory judgment proceeding, the plaintiffs sought to have declared invalid an amendment to the charter of the City and County of Denver, which authorized the issuance of general obligation bonds. The trial court sustained a motion of the defendants for judgment on the pleadings, and dismissed the complaint. We affirm on the basis that the bond issue was validly authorized.

The charter amendment provided for the issuance in Denver's name and behalf of not to exceed $6,000,000 in bonds. The proceeds of the bond issue are to be used to defray in part Denver's share of the cost of a municipal urban renewal project. Participants in this project are to be the Denver Urban Renewal Authority, the Federal Government, the State of Colorado and Denver. The project envisaged acquisition of a site; construction and other acquisition of buildings, other structures, furnishings and equipment; and performance of other activities under Colorado's Urban Renewal Law; all in connection

with a public education complex, commonly designated as the Auraria Higher Education Complex and designated by the United States Department of Housing and Urban Development by the project name "Auraria Urban Renewal Project" and by the project number "Colo. R-24." The project when completed is to be used by public education institutions, including Metropolitan State College. The charter amendment provided that the Council of the City and County of Denver was authorized and empowered to issue the bonds without any further preliminaries. All of the foregoing information in this paragraph was contained in the charter amendment, which was published in full in advance of the election.

The ballot read as follows:

"For                                                        Against

"Amendment No. 1

"Amending the Charter of the City and County of Denver relating to an urban renewal project for a public education complex, and, in cooperation with the Denver Urban Renewal Authority, the Federal Government and the State of Colorado, the issuance of bonds of the City and County of Denver to defray in part the cost of such project, and providing other matters relating thereto."

I.

Initially, the plaintiffs protest that the trial court erred procedurally in dismissing the complaint, when it should have made a determination of the issues. It is apparent that the trial judge concluded that the proceedings relating to the bond issue of which complaint was made were valid, and that this was the basis for his order. We agree with the plaintiffs that the court should have made a determination instead of dismissing the case. It is true that in *Rinn v. Bedford*, 102 Colo. 475, 84 P.2d 827 (1938), this court approved dismissal of the complaint under like circumstances. The opinion in *Bennett's, Inc. v. Krogh,* 115 Colo. 18, 168 P.2d 554 (1946), in effect reversed the procedural ruling in *Rinn* and held that, in a declaratory judgment action in which the court rules

against the position of the plaintiff, it should enter a declaratory judgment and not sustain a motion to dismiss. However, under the theory of both *Rinn* and *Bennett's*, we can proceed to the determination of the legal points involved. In contrast to the situation in *Bennett's* which made a remand preferable, we see no reason for the trial court to reinstate the complaint and enter a judgment consonant with the views expressed herein. In other words, our opinion should be sufficient for those having an interest in the outcome of this proceeding.

II.

■ Both sides agree that the word "taxpaying" in the term "taxpaying electors" should be considered as deleted. This is because of the decision in *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S. Ct. 1990, 26 L. Ed. 2d 523 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S. Ct. 1897, 23 L. Ed. 2d 647 (1969); and *Pike v. School District No. 11*, 172 Colo. 413, 474 P.2d 162 (1970). We agree. So far as is involved in this proceeding, whenever the term "taxpaying electors" appears in the Colorado Constitution and in the Denver Charter, it is construed to mean merely "electors."

III.

■ The principal thrust of the argument of the plaintiffs is that this charter amendment did not comply with the limitation contained in Colo. Const. art. XX, § 1 that Denver has the power to issue bonds only upon the vote of the electors.

Under Colo. Const. art XX, § 1, it is provided that Denver "shall have the power to issue bonds upon the vote of the taxpaying electors, at any special or general election, in any amount necessary to carry out any of said powers or purposes, as may by the charter be provided." Except for the possibility that the purpose of this bond issue is not within the powers or purposes enumerated in § 1 ahead of the above quoted portion, we feel that the charter amendment constituted a compliance with the § 1 election requirement for a general bond issue. Indeed,

the only reason this amendment-bond issue possibly could not be upheld solely upon the basis of art. XX, § 1 is that the "said powers or purposes" quoted above may not include urban renewal projects.[1] However, art XX, § 6, which was added to art. XX in 1912, clearly expanded the purposes for which bonds might be issued. The enumerated purposes of § 1 were superseded by the general § 6 standard of "local and municipal matters."

Colo. Const. art. XX, § 6, granted to home rule cities "the *powers* set out in sections 1, 4 and 5 of this article ...." (Emphasis added.) It is to be observed that § 6 does not mention that the *limitations* of § 1 are to continue as to home rule cities. The limitation of "said powers and purposes" upon home rule cities was removed by the grant of powers in local and municipal matters contained in § 6. An analogous situation was the similar effect of § 6 upon bonded indebtedness limitations in Colo. Const. art. XI, § 8. *Fladung v. Boulder,* 165 Colo. 244, 438 P.2d 688 (1968); *Davis v. Pueblo,* 158 Colo. 319, 406 P.2d 671 (1965); and *Berman v. Denver,* 156 Colo. 538, 400 P.2d 434 (1965). The reasoning of these cases is fully applicable here.

In *McNichols v. Denver,* 101 Colo. 316, 74 P.2d 99 (1937) the issuance of general obligation bonds for the purchase of lands to be donated to the United States to be used for the purposes of an air corps technical school and bombing field was held to be for a local and municipal purpose. The educational complex here involved is even more definitely embraced within a local and municipal purpose.

It seems apparent that those preparing this charter amendment followed the procedure upheld in *Cook v. Delta,* 100 Colo. 7, 64 P.2d 1257 (1937). The language of the charter amendment in that case was nearly identical to the language used here, and the effect was very similar as well. The electorate there authorized by charter

---

[1] The effect of the term "said powers and purposes" has not been argued.

amendment a bond issue for which the existing charter provided another method of authorization.

There is some significance in the fact that Colo. Const. art. XI, § 6, 7, 8 and 9 were repealed, and § 6 and 7 re-enacted at the general election held on November 3, 1970, effective January 1, 1972. This new re-enactment appears more specifically to permit the procedures which were followed by Delta in 1935 and Denver in 1969.

### IV.

■ The plaintiffs contend that there was not compliance with unrepealed sections of the Denver Charter relating to elections for the issuance of general obligation bonds. The answer is simply that the 1969 Charter Amendment established the rules of the game, and, so far as this bond issue is concerned, these other provisions relating to the manner of bond elections were not applicable.

### V.

■ The Charter Amendment contained the following provisions:

"Any and all parts of the charter of the city and county of Denver (other than this section) and all laws in conflict with this section of the charter are hereby repealed."

It is claimed that this repealer violates Colo. Const. art. V, § 24 and the Denver Charter, § B1.9-3, which are basically identical. The charter provision provides:

"No ordinance shall be revised or amended, or the provisions thereof extended or conferred by reference to title only. So much thereof as is revised, amended, extended or conferred, shall be re-enacted at length."

The constitutional provision relates to *statutes* and the charter provision relates to *ordinances,* not to amendments of the Constitution and Charter. *Denver v. Mewborn,* 143 Colo. 407, 354 P.2d 155 (1960). As was also said in *Mewborn,* "any limitation on the power to amend the charter must be found in a specific provision of either the constitution or the charter." We are aware of no such constitutional or charter provision which specif-

ically states the limitation for which the plaintiffs argue.

## VI.

■ The plaintiffs argue that by the charter amendment, the electorate made an unconstitutional delegation of power to the City Council. We find no applicability in the cases cited. In support of the delegation of powers argument, the plaintiffs again urge that Colo. Const. art. XX, § 1 requires an election to authorize a general obligation bond issue. As we have already indicated, the submission to the electorate of, and its vote upon, this Charter Amendment in fact constituted the election. A delegation of power is not involved.

■ The claim also is made that the cooperation of governmental bodies in such a joint undertaking constitutes an improper delegation of power. We find ourselves unable to agree. cf. *Rabinoff v. District Court,* 145 Colo. 225, 360 P.2d 114 (1961).

## VII.

■ It has been submitted that this bond issue violates the debt limitation contained in Denver's Charter. We do not pass upon whether the Charter limitation is applicable because the issue has been raised prematurely. A debt limitation is exceeded as of the time the bonds are issued. *Hebel v. School District,* 131 Colo. 105, 279 P.2d 673 (1955). No bonds have been issued as yet. If this is a valid objection, it will have to be raised later in another proceeding.

## VIII.

We regard the other assignments of error as without merit.

Judgment affirmed.